UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AURELIO MUNOZ-ESCALANTE,<br>d/b/a BLACK HILLS THINNING; and<br>SERGIO MUNOZ-ESCALANTE,<br>d/b/a SM LOGGING AND SERVICES;<br><br>Defendants. | 5:14-CV-05085-KES<br><br><br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART GOVERNMENT'S<br>MOTION FOR SUMMARY JUDGMENT |

Plaintiff, United States of America, brings this action against defendants, Aurelio Munoz-Escalante and Sergio Munoz-Escalante, seeking damages for money paid to defendants based on defendants' alleged false and fraudulent statements and claims. Plaintiff alleges in its complaint the following causes of action: violations of the False Claims Act under 31 U.S.C. § 3729, common law fraud, unjust enrichment, and payment by mistake. Defendants have not responded to plaintiff's complaint. Plaintiff now moves for summary judgment.

## BACKGROUND

The undisputed facts,[1] viewed in the light most favorable to defendants, are as follows:

---

[1] The United States filed its statement of undisputed material facts. Defendants have not objected to the facts and the time for objections has passed. As a

Defendant Aurelio Munoz-Escalante did business as Black Hills Thinning in Rapid City, South Dakota. Defendant Sergio Munoz-Escalante did business as SM Logging Company in Rapid City, South Dakota. The United States Forest Service awarded both defendants' businesses service contracts to thin trees in the Black Hills National Forest. Aurelio was awarded six contracts between March 31, 2009, and September 8, 2011. Docket 1-2 at 2. Sergio was awarded ten contracts between July 10, 2007, and September 16, 2011. Docket 1-2 at 7.

Under the terms of the contracts, both companies were required to verify each worker's employment eligibility, pay workers the prevailing wage, provide employee benefits, and compensate workers for overtime performed. Additionally, neither company could hire undocumented or unauthorized aliens, who were not eligible for employment in the United States.

Despite the prohibitions, Black Hills Thinning and SM Logging Company hired undocumented and unauthorized workers, and defendants knew they were hiring people not allowed to work on the United States Forest Service contracts. Defendants attempted to conceal unauthorized workers by not requiring the completion of eligibility verification forms and by failing to ensure that each worker's employment documents were genuine. Defendants paid unauthorized workers by issuing checks to the unauthorized alien workers directly, by issuing checks to workers with false or fictitious names, or by

---

result, under D.S.D. Civ. LR 56.1(D), the movant's statement of material facts are deemed admitted.

2

making payments to other workers, the proceeds of which were divided among several of the unauthorized alien workers.

Even though defendants did not abide by the terms of the contracts, defendants submitted invoices for payment in full. Some invoices were accompanied by a certification stating, "[T]he amounts requested are only for performance in accordance with the specifications, terms and conditions of the contract." Docket 15 at 4. Aurelio submitted 47 invoices for work connected with the Forest Service contracts, and Sergio submitted 17 invoices.

On January 31, 2014, both defendants pleaded guilty to Making a False Statement in violation of 18 U.S.C. § 1001. Aurelio admitted to causing "a loss in wages, overtime, and fringe benefits in the amount of $300,000.00 to former employees pursuant to the described United States Forest Service contracts and federal law." *United States of America v. Aurelio Munoz-Escalante*, No. CR 12-50131-05, Docket 417 at 5. Sergio admitted to causing "a loss in, among other things, restitution, wages, overtime, and fringe benefits in the amount of $199,000, in part to former employees . . . ." *United States of America v. Sergio Munoz-Escalante*, No. CR 12-50131-07, Docket 407 at 5. Aurelio was ordered to pay $135,276.88 in restitution and agreed to forfeit an interest in property worth approximately $164,724.00. Docket 1-3 at 5; Docket 14 at 9 fn 5. Sergio was ordered to pay $198,652.98 in restitution. Docket 1-3 at 11. The government now seeks damages and penalties in the amount of $1,482,000 — $952,000 from Aurelio and $530,000 from Sergio.

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing

4

the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

### I. False Claims Act

Under 31 U.S.C. § 3729(a)(1), a person cannot knowingly present or cause to be presented "a false or fraudulent claim for payment or approval." To have a prima facie case under 31 U.S.C. § 3729(a)(1), the government must prove "that (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *U.S. ex rel. Quirk v. Madonna Towers, Inc.*, 278 F.3d 765, 767 (8th Cir. 2002). To act "knowingly" under the False Claims Act, a person must (1) have actual knowledge of the information, (2) act in deliberate ignorance of the truth or falsity of the information, or (3) act in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). Although "innocent mistakes and negligence are not offenses under the Act," the government is not required to prove that the defendant had a specific intent to defraud the government. *Id.* at 767 (citing *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464-65 (9th Cir. 1999)). "The requisite intent is the knowing presentation of what is known to be false. In short, the claim must be a lie." *Hindo v. Univ. of Health Sci./Chi. Med. Sch.*, 65 F.3d 608, 613 (7th Cir. 1995). The Eighth Circuit Court of Appeals has also held that a guilty plea in a criminal case can serve as a basis for establishing the essential elements of a False Claims Act claim. *See United States v. Aleff*, 772 F.3d 508, 510 (8th Cir. 2014) (affirming a district

court judgment where "[t]he district court found that [defendants'] guilty pleas established the essential elements of an FCA claim.").

Here, the factual basis statements for both defendants establish the essential elements for a False Claims Act cause-of-action. Defendants submitted invoices in connection with the United States Forest Service contracts. Defendants had hired unauthorized workers in breach of the contracts, and defendants knew that hiring unauthorized workers was a breach of contract when they submitted their invoices. Because the government has proven all of the elements necessary for a False Claims Act cause-of-action, summary judgment is granted.

## II.  Common law fraud

The South Dakota Supreme Court has explained that the essential elements of fraud are:

> [T]hat a representation was made as a statement of fact, which was untrue and *known to be untrue by the party making it, or else recklessly made;* that it was made *with intent to deceive* and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.

*Stene v. State Farm Mut. Auto. Ins. Co.*, 583 N.W.2d 399, 404 (S.D. 1998) (citing *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991)).

Here, both defendants submitted certifications along with some of their invoices for work performed in connection with the contracts. The invoices stated work was performed in compliance with the contract, but defendants knew their work was not in compliance with the contract. Because defendants also sent the certifications with the intent to be paid for their companies' work

and the United States Forest Service paid the defendants based on their certifications that the work was completed in compliance with the contracts, defendants committed common law fraud. Therefore, summary judgment is granted.

### III. Unjust enrichment

The South Dakota Supreme Court has explained that "[u]njust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.' " *Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003). To prevail on a claim of unjust enrichment, the government must show that (1) defendants received a benefit; (2) that defendants were aware that they received a benefit; and (3) that it is inequitable for defendants to retain the benefit without paying for it. *Id.* (citing *Action Mech., Inc. v. Deadwood Historic Pres. Comm'n*, 652 N.W.2d 742, 750 (S.D. 2002)).

The South Dakota Supreme Court has also explained that unjust enrichment is an equitable remedy. *Id.* at 748. "An essential element to equitable relief is the lack of an adequate remedy at law." *Rindal v. Sohler*, 658 N.W.2d 769, 772 (S.D. 2003). "[U]njust enrichment is unwarranted when the rights of the parties are controlled by an express contract." *Johnson v. Larson*, 779 N.W.2d 412, 416 (S.D. 2010) (citing *Burch v. Bricker*, 724 N.W.2d 604, 609-10 (S.D. 2006)).

Because the parties had express contracts and the benefit conferred on defendants was specified as part of the parties' contracts, the government has

7

an adequate remedy at law.[2] Therefore, the government's motion for summary judgment on its unjust enrichment claim is denied and entered in favor of defendants.

## IV. Payment by mistake

The Eighth Circuit Court of Appeals has stated that "[w]here monies are erroneously paid by agents of the United States, whether the error be one of fact or of law, the Government may always recover the money improperly paid." *Stone v. United States*, 286 F.2d 56, 58-59 (8th Cir. 1961). Here, the United States Forest Service mistakenly believed that defendants were complying with the terms of the contracts. Because of this mistake of fact, the government is entitled to recover the money that was mistakenly paid to defendants. Therefore, summary judgment is granted on this claim to the government.

## V. Damages

The government seeks damages based on count one of its complaint.[3] Under 31 U.S.C. § 3729, a defendant found to violate the statute "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." The Eighth Circuit

---

[2] *See Johnson*, 779 N.W.2d at 416 (S.D. 2010) (stating "[b]ecause there existed two express contracts, and the benefit conferred on Larson was specified as part of the parties' contracts, Johnson had a valid remedy at law" and reversing trial court's award of damages for unjust enrichment).

[3] Because the government seeks damages based solely on the False Claims Act, there is no election of remedies issue. *See Popp Telcom v. Am. Sharecome, Inc.*, 210 F.3d 928, 936 (8th Cir. 2000) (stating the purpose of the election of remedies doctrine is to "prevent double recovery on the same wrong"). Because the government is seeking to recover on the False Claims Act count alone, there is no danger of multiple recoveries for the same harm.

Court of Appeals has also stated that "the measure of the government's damages would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful." *United States v. Coop. Grain & Supply Co.*, 476 F.2d 47, 62 (8th Cir. 1973) (quoting *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966)); The False Claims Act: Fraud Against the Government § 6:4. The civil penalty is determined by counting "[e]ach individual false claim or statement . . . ." *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995) (citing *United States v. Bornstein*, 423 U.S. 303, 313 (1976)).

### A. Defendant Aurelio Munoz-Escalante's liability

Based on the formula outlined in 31 U.S.C. § 3729, Aurelio is liable for $759,999.12. Aurelio admitted to causing damage in the amount of $300,000. After multiplying this number by the treble damages provision in the statute, the total amount of damages is $900,000. Mandatory penalties may range from $5,000 to $10,000 per false claim. After multiplying the thirty-two false claims submitted by Aurelio by a penalty of $5,000 per violation, the total penalty is $160,000. Total damages of $900,000 plus penalties of $160,000 equals $1,060,000. After subtracting the $300,000.88 in restitution and forfeited property already awarded in the criminal case, Aurelio is liable for $759,999.12.

### B. Defendant Sergio Munoz-Escalante's liability

Based on the formula outlined in 31 U.S.C. § 3729, Sergio is liable for $458,347.02. Sergio admitted to causing damage in the amount of $199,000.

9

After multiplying this number by the treble damages provision in the statute, the total amount of damages is $597,000. After multiplying the 12 false claims submitted by Sergio by a penalty of $5,000 per violation, the total penalty is $60,000. Total damages plus penalties equals $657,000. After subtracting the $198,652.98 in restitution already awarded in the criminal case, Aurelio is liable for $458,347.02.

## CONCLUSION

Because no questions of fact remain on the issues of whether or not defendants violated the False Claims Act, committed common law fraud, or were mistakenly paid under the contracts, summary judgment is granted in favor of the government on counts one, two, and four of the government's complaint. Because a claim for unjust enrichment is prohibited in this case, summary judgment is granted to defendants on count three. Accordingly it is

ORDERED that the government's motion for summary judgment (Docket 13) is granted in part and denied in part.

Dated October 20, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE